# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

YOLANDA CAMACHO TRIGUEROS,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

    Defendant.

Case No. CV 17-1128 AJW

MEMORANDUM OF DECISION

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2-3]. In a November 16, 2015 written hearing decision that constitutes the Commissioner's final decision, an administrative law judge ("ALJ") concluded that plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform alternative work that exists in significant numbers in the national economy. [Administrative Record ("AR") 11-22].

///

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

## Discussion

**Medical opinion**

Plaintiff contends that the ALJ erred in relying on the opinions of the Commissioner's consultative examining psychologist and the non-examining state agency psychologist.

The ALJ found that plaintiff had severe mental impairments consisting of psychotic disorder; depressive disorder with anxious features; schizoaffective disorder, bipolar type; and mood disorder. [AR 13]. The ALJ assessed plaintiff's RFC as follows. She could perform a full range of work at all exertional levels; understand, remember, and carry out simple job instructions; maintain attention and concentration to perform non-complex, routine tasks in a work environment free of fast-paced productions requirements; and occasionally interact with coworkers and supervisors. Plaintiff could not perform work that requires directing others, engaging in abstract thought, planning, or directly interacting with the general public. [AR 16].

In assessing plaintiff's RFC, the ALJ relied on the opinion of the consultative psychologist Barbara Gayle, Ph.D., and the December 2013 opinion of the state agency psychological consultant Uwe Jacobs, Ph.D. [AR 297-303].

During her November 2013 consultative examination, Dr. Gayle interviewed plaintiff, administered

psychological tests, and performed a mental status examination. [AR 297-303]. She did not review any medical records. Dr. Gayle opined that plaintiff put forth "less than her best effort" during psychological testing. [AR 301]. She assessed plaintiff with "adequate cognitive skills to cope with a simple to mildly complex task." Plaintiff's attention was "adequate," but her concentration was "less than adequate." Plaintiff was preoccupied with "personal issues," which "may affect the type of work that she would be successful at." Plaintiff "appear[s] to have some deficits in her insight and judgment" that "also would affect what she is successful at." [AR 302]. "Based on her behavior with [Dr. Gayle], it appears that she would do better with clear limits when working with an authority figure." [AR 303].

Dr. Jacobs reviewed plaintiff's file about a month after Dr. Gayle examined plaintiff. He reviewed Dr. Gayle's consultative examination report and concluded that plaintiff was "malingering" during that examination. [AR 53]. Based on Dr. Gayle's report, a March 2009 treatment report from Kedren Community Mental Health Center ("Kedren") , and an April 2011 treatment report from Kedren that was "difficult to read," Dr. Jacobs opined that plaintiff did not have understanding and memory limitations but did have sustained concentration and persistence limitations. Plaintiff was "moderately limited" in the ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; ask simple questions or request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness. Plaintiff could sustain concentration, persistence, and pace for two-hour intervals during regular work days. She required limited contact with others. She was "not significantly limited" in the ability to carry out very short and simple instructions and the ability make simple work-related decisions. [AR 53-54].

The ALJ found Dr. Gayle's opinion "very persuasive in the formulation of [an RFC] assessment" and showed that her psychiatric symptoms "are having little effect on her ability to maintain appropriate attention and concentration for the performance of non-complex jobs." [AR 19]. The ALJ also said that Dr.

3

Jacobs's opinion was "accorded considerable weight" and "supports the conclusions of Dr. Gayle." [AR 19]. Plaintiff contends that in the ALJ did not properly apply the factors that the Commissioner uses to weigh medical opinion evidence, and that the opinions of Dr. Gayle and Dr. Jacob deserve little weight. Plaintiff's contentions have merit.

The factors used to evaluate medical opinion evidence are set forth in the Commissioner's regulations. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[1] Factors relevant to evaluating any medical opinion include the degree to which the opinion is supported by other evidence in the record, the "quality of the explanation provided" by the physician, the consistency of the medical opinion with the record as a whole, the physician's speciality, and "[o]ther factors" such as the degree of understanding a physician has of the Commissioner's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. See Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. §§ 404 .1527(c), 416.927(c).

Dr. Gayle and Dr. Jacobs issued their opinions in November 2013 and December 2013, respectively, about two years before the ALJ issued his decision. The ALJ considered that evidence, but Dr. Gayle did not review any treatment records in forming the opinion that the ALJ found "very persuasive" in assessing plaintiff's RFC. [AR 19, 298]. Dr. Jacobs reviewed just two prior treatment reports, but he indicated that one was difficult to read. [AR 51].

The record includes psychiatric treatment reports from March 2009 through July 2015. [See AR 238-294, 310-495, 516-538]. Plaintiff's treatment reports that predate the opinions of Dr. Gayle and Dr. Jacobs include records of a 10-day involuntary psychiatric hospitalization in February 2009 with diagnoses of psychotic disorder not otherwise specified ("NOS"), rule out schizophrenia, and mood disorder NOS. They

---

[1]Those factors include the length of the treatment relationship, the frequency of examination by the treating physician, and the nature and extent of the treatment relationship between the patient and the treating physician. Additional factors relevant to evaluating any medical opinion include the degree to which the opinion is supported by other evidence in the record, the "quality of the explanation provided" by the physician, the consistency of the medical opinion with the record as a whole, the physician's speciality, and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. §§ 404 .1527(c)(2)-(6), 416.927(c)(2)-(6).

include extensive progress notes documenting follow-up treatment for psychotic and depressive symptoms, including prescribed psychotropic medications. [See AR 245-294, 398-440]. Plaintiff gave a history of prior psychiatric hospitalizations in 1992, 2001, and 2004. [See AR 259]. Plaintiff's treatment reports that post-date the opinions of Dr. Gayle and Dr. Jacobs include records of an involuntary psychiatric hospitalization in December 2014; diagnoses of schizoaffective disorder, bipolar type, and psychotic disorder NOS; progress notes documenting treatment with supportive therapy and psychotropic medications; subjective psychiatric complaints of varying nature and intensity; abnormal mental status findings; and variable response to treatment. [See AR 375-379, 441-495, 516-524]. Those records are highly relevant to the issue of the nature and severity of plaintiff's mental impairment.

Applying the relevant factors set forth in the regulations, Dr. Gayle and Dr. Jacobs lacked familiarity with extensive probative evidence in the record, and their opinions are not consistent with or supported by the record as a whole. See 20 C.F.R. §§ 404.1527(c), 416.927(c). For example, Dr. Gayle diagnosed plaintiff with "depression with anxious features" but made no findings or diagnosis suggesting a psychotic disorder. Obviously relying on the treatment reports that Dr. Gayle did not consider, the ALJ found that plaintiff had depression with anxious features but also had three additional severe mental impairments: severe psychotic disorder; schizoaffective disorder, bipolar type; and mood disorder. [AR 13]. Dr. Gayle's unfamiliarity with plaintiff's diagnosis of and treatment for psychotic disorders is significant because Dr. Gayle could not take that evidence into account in evaluating what she characterized as plaintiff's poor effort and inconsistent presentation, and what Dr. Jacobs characterized as malingering.

The varying intensity of plaintiff's psychotic signs and symptoms documented in the treatment reports (and reflected in the ALJ's summary of the evidence [AR 16-17]) also demonstrates that the ALJ erred in relying on two medical opinions that failed to reflect plaintiff's mental condition over time. The Commissioner's regulations recognize that a claimant's level of functioning can vary over time, and they stress the importance of longitudinal evidence in assess a claimant's mental functioning. See, e.g., 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00D.c.2 ("Need for longitudinal evidence. . . .[I]t is vital to obtain evidence from relevant sources over a sufficiently long period of time prior to the date of adjudication to establish your impairment severity."); see also Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he

draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

The ALJ erred in evaluating the opinions of Dr. Gayle and Dr. Jacobs, and those opinions are not substantial evidence supporting the ALJ's RFC finding.

**Remedy**

A district court may "revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing[.]" Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). A remand for further administrative proceedings is the proper remedy in this case because the ALJ's error in weighing the medical opinion evidence means that "all essential factual issues" have been not been resolved. Treichler, 775 F.3d at 1101.

On remand, the Commissioner shall direct the ALJ to offer plaintiff the opportunity for a new hearing, take appropriate steps to develop the record, reevaluate the medical evidence of record and plaintiff's subjective testimony, and issue a new hearing decision containing properly supported findings.[2]

**Conclusion**

For the reasons stated above, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

January 3, 2018

_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

[2] This disposition makes it unnecessary to separately consider plaintiff's remaining contentions.